NEW YORK GENERAL SESSIONS, June, 1864. Before *Abraham D. Russell*, City Judge, and *John T. Hoffman*, Recorder.

## THE PEOPLE *v.* ROBERT MURRAY *et al.*

An indictment in a State court for an offense against the penal laws of the State is not removable by the defendants, on petition, before plea, into the Circuit Court of the United States, under the provisions of section 5 of chapter 84 of the thirty-seventh Congress.

Congress has not the power to confer upon the United States courts jurisdiction to try indictments found in the State courts.

It is not enough that an act of Congress gives the United States Circuit Court jurisdiction of such a case. It can have no jurisdiction that is not conferred by the Constitution as well as by the law.

The *dictum* of Chief Justice MARSHALL, in *Osborn* v. *The United States* (9 *Wheat.*, 821), declaring that Congress is capable of giving the Circuit Court of the United States original jurisdiction in any case to which the appellate jurisdiction extends, has no application to a case in the origin of which neither the Constitution nor laws of the United States are involved, and in which a question involving either may never arise, or, if it does, can only arise in the progress of the cause. By HOFFMAN, recorder.

THE defendants were indicted for the forcible seizure, imprisonment and abduction of one Arguelles, who, it was claimed, was secretly taken out of the country by the assistance of the defendants and conveyed to Cuba.

An application was made, in behalf of the defendants, for an order removing the indictment for trial to the Circuit Court of the United States, under the provisions of section 5 of chapter 84 of the acts of Congress of 1863. No plea had been put in by the defendants. The motion was founded on an allegation in the petition that the act in question was done by and under the order of the President of the United States.

*William M. Evarts* and *James T. Brady*, for the prisoner.

I. The application is made under the provisions of the 5th section of the act of Congress, passed March 3, 1863, entitled, "An act relating to *habeas corpus*, and regulating judicial proceedings in certain cases." The papers upon which the motion is made show the case to be within the purview of that section. (12 *Stat. U. S.*, 755.)

II. As it is conceded that the laws of the United States within and conformed to the authority of the Constitution of the United States are paramount in all courts and jurisdictions, the motion must be granted, unless the section of the act in question is void for repugnance to the Constitution.

III. That no such repugnance exists, and that the act of Congress is valid, so far as it relates to the removal of a *civil suit* from the State court to the United States Circuit Court, has been adjudged, upon great consideration, by the general term of the Supreme Court of this district.

It is respectfully submitted that the question within the premises of that decision should not be deemed an open one in this court. (*Jones* v. *Seward. General Term, March* 14, 1864: LEONARD, P. J., SUTHERLAND *and* CLERKE, JJ.)

IV. The proposition upon which the act, in its relation to civil suits, was upheld as constitutional by the Supreme Court of this State, was that laid down and always adhered to by the Supreme Court of the United States in the case of *Osborn* v. *The Bank of the United States* (9 *Wheat.*, 821).

Chief Justice MARSHALL, in delivering the opinion of the court, says: "We perceive no ground upon which the proposition can be maintained that Congress is incapable of giving the Circuit Courts *original* jurisdiction in any case to which the *appellate* jurisdiction extends." (*Ut supra, p.* 821.)

V. As the section of the act in question, in terms, provides for the removal of *criminal* prosecutions from the State to the United States courts, the only question is, whether such provision is within the authority of the Constitution of the United States.

But, upon the adjudication of the Supreme Court of the United States, the answer to that question is to be sought in the answer to the question whether criminal prosecutions in the State courts, within the purview of this section of the act of 1863, are subject to the *appellate* jurisdiction of the Federal judiciary.

VI. That criminal prosecutions, wherein the question of guilty or not guilty turns upon an authority, right in justifica-

tion under a law in the Constitution of the United States, are within the appellate jurisdiction, cannot be doubted, either upon reason or authority.

1. Nothing can be more at variance with the paramount authority of the Federal government than that it should be possible that a man should be punished by a State court as a criminal for an act enjoined, permitted or justified as a duty or a right under the laws or Constitution of the United States.

To guard against this possibility, the appellate jurisdiction of the Federal judiciary is requisite and has been established.

2. The exercise of this appellate jurisdiction is familiar, and its constitutionality has never been judicially doubted or discredited. (*Cohens* v. *State of Virginia*, 6 *Wheat. R.*, 264; *Worcester* v. *State of. Georgia*, 6 *Pet. R.*, 567; *Prigg* v. *Commonwealth Penn.*, 16 *Id.*, 539; *United States* v. *Booth*, 21 *How. R.*, 506.)

VII. As, then, it cannot be doubted that a writ of error will lie, to review before the Supreme Court of the United States the final judgment of the highest court in this State, in the case in which the present application is made; so, it is established by the decision of the paramount tribunal that *original* jurisdiction may be conferred by Congress in the Circuit Court in such case.

By the act of Congress of March 3, 1863, such jurisdiction has been conferred on the United States Circuit Courts, and the manner and effect of a transfer to their jurisdiction provided.

*A. Oakey Hall* (District Attorney), for the People.

The defendant, who is United States marshal, has been indicted for the forcible seizure and confinement of one Arguelles, &c.

The alleged offense is one against the statutes of the State of New York, and is not against any Federal statute.

A motion is made to remove the indictment from the State Court into the United States Circuit Court for trial; and the application is based upon section 5 of chapter 81 of the Laws

of 37th Congress (March, 1863). The supposed applicable provisions are as follows:

"SEC. 5. And be it further enacted, that if any suit or '*prosecution*,' civil or '*criminal*,' has been or shall be commenced in any State court against any officer, civil or military, or against any other person, for any arrest or imprisonment made, or other trespasses or '*wrongs*' done or committed, or any act omitted to be done at any time during the present rebellion, by virtue or under color of any authority derived from or exercised by or under the President of the United States, or any act of Congress, and the defendant shall, at the time of entering his appearance in such court, or if such appearance shall have been entered before the passage of this act, then, at the next session of the court in which such suit or '*prosecution*' is pending, file a petition, stating the facts, and verified by affidavit, for the removal of the cause for trial at the next Circuit Court of the United States, to be holden in the district where the suit is pending, and offer good and sufficient surety for his filing in such court, on the first day of its session, copies of such process and other proceedings against him, and also for his appearing in such court and entering special bail in the cause, if special bail was originally required therein. It shall then be the duty of the State court to accept the surety and proceed no further in the cause or '*prosecution*,' and the bail that shall have been originally taken shall be discharged. And such copies being filed, as aforesaid, in such court of the United States, the cause shall proceed therein in the same manner as if it had been brought in said court by original process, whatever may be the amount in dispute or the damages claimed, or whatever the citizenship of the parties, any former law to the contrary notwithstanding." * * * * *

I. This motion can be granted only through an unconstitutional application of the foregoing provisions.

1. If the prayer of the petitioner should be granted, a State will originally stand in the United States Circuit Court as plaintiff, with one of her own citizens as defendant.

2. Such a primary status of parties, either in a civil or criminal controversy, is beyond the judicial jurisdiction granted by the Federal Constitution.

3. The constitutional test in an application to remove a controversy from a State to a Federal court, and confer upon the latter original jurisdiction is, could the controversy so removed have been originally commenced in the latter tribunal? (1 *Curtis' Commentaries on Jurisdiction*, § 148; *Conkling's Treatise on the Organization, Jurisdiction and Practice of the United States Courts,* 3d ed., p. 177; 17 *Johns. R.*, 21; *United States* v. *Latham*, 6 *Am. Law Journal, p.* 115; *Gale* v. *Babcock,* 4 *Wash. C. C. R.*, 200.)

4. Let us refer to the constitutional provisions. Art 3, § 2, is as follows:

" The judicial power shall extend to all cases in law and equity arising under this Constitution, the laws of the United States, and treaties made, or which shall be made under their authority; to all cases affecting ambassadors, other public ministers and consuls; to all cases of admiralty and maritime jurisdiction; to controversies to which the United States shall be a party; to controversies between two or more States, between a State and citizens of another State, between citizens of different States, between citizens of the same State claiming lands under grants of different States, and between a State or the citizens thereof, and foreign States, citizens or subjects."

5. Here let it be conceded by us that whenever this controversy between the State and Murray involves a determination of constitutional questions adverse to Murray in the State tribunal of last resort, then the *appellate* jurisdiction of the national Supreme Court may be invoked by writ of error. But this discussion solely relates to a claim of *original* jurisdiction of the United States Circuit Court.

6. Under which of the foregoing provisions of the Constitution could the State of New York have entered this latter court, and have indicted Murray, her own citizen, for a State offense?

7. Whatever judicial jurisdiction is not granted by the

The People *v.* Murray *et al.*

Federal Constitution expressly, or by necessary implication to the Federal courts, exclusively belongs to the State courts. (1 *Kent*, 324.)

8. The relation of the States and the Federal government on this subject of judicial jurisdiction is, under the theory of our institutions, necessarily reciprocal. The former cannot prosecute for offenses against Federal statutes, and the latter cannot prosecute for offenses against State statutes. As cases " *arising* under the laws of the United States " must be originally litigated in national tribunals, so those *arising* under State law must be originally controverted in State tribunals. The national government is protected from State usurpation; and the States are made secure against Federal domination. The Supreme Court of the United States may be appealed to by the national or the State governments whenever either infringe upon the constitutional and appropriate functions of the other.

9. It is evident, from considering the theory of this relation, that, even when a constitutional status of parties exist, there may be no standing for them in the Federal courts for want of jurisdiction over the subject matter.

10. Hence, although a State sue an alien, the latter cannot always transfer the subject matter from the State to the Federal tribunal. Yet, in that case, there would be an apparent right of removal under the Constitution, because of a proper conjunction of parties.

11. The latter proposition was established in *Respublica* v. *Cobbett* (3 *Dallas R.*, 476), and the subject matter of the suit merely *savored* of criminality.

William Cobbett had been sued in an action of debt by the State of Pennsylvania, upon a broken recognizance for good behavior. He petitioned to have it removed, for trial, into the United States Circuit Court, on the ground that he was an alien, and, under the concluding sentence of section 2, article 3, *supra*, the removal was objected to. Messrs. Tilghman, Lewis and Rawle, of Pennsylvania, and Harper, of South Carolina, argued in favor of the removal. Messrs. Ingersoll

The People *v.* Murray *et al.*

and Dallas argued against it. There was color for the application, because Cobbett was a "foreign subject," and because he was defendant in action of debt. The court, *per* McKean, Ch. J., concludes its opinion as follows: "*But that neither the Constitution nor Congress ever contemplated that any court under the United States should take cognizance of anything* savoring of criminality against a State: *That the action before the court is of a criminal nature, and for the punishment of a crime against the* State. That yielding to the prayer of a petitioner would be highly inconvenient in itself, and injurious in the precedent; and the cognizance of it would not be accepted by the Circuit Court, if sent to them, for even consent cannot confer jurisdiction. For these reasons, and others, omitted for the sake of brevity, I conclude the prayer of William Cobbett cannot be granted."

12. Thus, an examination of the case of Cobbett shows that the court, although satisfied of the general rights of an alien to force his State antagonists into the Federal court, doubted his constitutional right so to do when the subject matter of the suit was an offense against State law. How much more should this court doubt the constitutionality of now removing a controversy wherein there is a defect of parties, with also a defect of subject matter?

II. So far as this State is concerned the question is an original one, and a recent decision of the Supreme Court in this district, approving a removal of an action from the State court into the United States Circuit Court, under the cited law of 1863, does not bind this court against entertaining the question.

1. The case of *Jones* v. *Seward*, wherein that decision was rendered (26 *How. Pr. R.*, 433), was one which could have been originally brought in the court to which it was removed, because there an individual plaintiff and an individual defendant came, and each were citizens of different States; hence, it fell within the provision of the Constitution allowing a citizen of one State to sue a citizen of another State in the United States court.

2. And cases from other States, which may be cited as aris-ing between individuals, fall within the same distinction.

3. Omitting the momentous and interesting considerations which arise from this attempt of the general government to control, if not to subvert State sovereignty, there was a bare legal apology for asking that *Jones* v. *Seward* should be removed because Federal legislation amply secured to the plaintiff his rights of procedure against the defendant, and there was in the court no defect of power to determine the controversy. But the act of 1863, under which this claim of removal is made, does not — to bridge a long chasm of intermediate difficulties — provide how the offender against a State statute shall be sentenced if convicted. In short, while the analogies of State procedure have been legislatively applied to *civil* suits when removed from State to Federal tribunals, none such have been applied to criminal prosecutions. AND WHO COULD PARDON?

III. But if there was not a failure of constitutional power respecting this motion, it should be denied for want of the necessary enabling legislation by Congress.

1. Because, even if a State may constitutionally be allowed to sue its own citizen civilly or criminally in a Federal court, as a matter of original jurisdiction the State must, nevertheless, be expressly authorized and enabled, by an act of Congress, to commence such suit. (*Per* WASHINGTON, J., *Gale*·v. *Babcock*, 4 *Wash. C. C. R.*, *pp.* 200, 345.)

2. Congress may have intended, by the invoked section, to force a trial, by a Federal court, of State indictments against Federal officials, etc. Doubtless such a guardianship of Federal trespassers might prove agreeable and serviceable to the admin-istration. But the intention is not carried out by the provisions. To effectuate it, something more of legislation is needed than an enactment to remove the criminal prosecution against an alleged Federal wrongdoer. There must be enabling legisla-tion, which shall provide for the anomalous *status* of a State prosecuting a State offender in a national court. Had this been done, then there must have been further legislation which should provide for process to compel the offender's appearance,

and also for an application of the State punishment by the Federal judge, to the conviction in a Federal court not permitted without express legislation to notice State procedure.

3. The statutes of 1863, as well as prior statutes, provide for the determination of private controversies, but not for the determination of such a controversy as is now at the bar of this court.

4. Is it not clear that, should this indictment be removed into the United States Circuit Court, the latter must remand it for want of these very provisions?

IV. Therefore, waiving all the interesting topics of argument and illustration which are suggested by the many startling provisions of the Federal statute in question, the conclusions of the court should be:

1. That the motion must be denied, because, to grant it, would be to make an unconstitutional application of the cited section.

2. That if no such constitutional barrier exists, the section does not warrant the motion in such a case as is now before the court.

3. That the defendant must answer the indictment.

A trial of this indictment appropriately raises, in an appropriate tribunal, this question: "Can Congress allow a Federal official to justify his unconstitutional trespass by pleading unconstitutional instructions of the President?"

No dispassionate citizen, will doubt that this momentous question should be impartially discussed and decided in these times of executive influence at the bar of a State court rather than at the bar of a Federal tribunal.

*Amasa J. Parker*, also for the People.

I. The simple question here is, whether original jurisdiction has been conferred on the Circuit Court of the United States by the act of 1863 (*ch.* 81).

We say it has not been so conferred, and could not be, because it is not permitted by the Constitution of the United States. This case is not included within any of the provisions

of section 2, article 3 of the Constitution, which define the cases in which jurisdiction may be given.

It does not arise under the Constitution or laws of the United States, or under any treaty made by the United States. The act of Marshal Murray for which he is indicted, was not done, either by direction of the Constitution, or of an act of Congress or of a treaty. No such direction is set up in his justification. He only sets up an order of the President, and that is not a case provided for in the Constitution. The Constitution does not give jurisdiction in cases arising under orders made by the President.

II. As the Constitution has conferred on the United States courts no jurisdiction over such a question, the act of Congress can give none; for the jurisdiction cannot be enlarged by Congress. (*Marbury* v. *Madison*, 1 *Cranch R.*, 174; *Cohens* v. *Virginia*, 6 *Wheat. R.*, 264; *Conkling's Treatise*, 3d ed., 60, 138.)

III. It is true the act of Congress provides that an order of the President may be interposed as a *defense.* This does not necessarily bring in question the validity of the original transaction. Like the statute of limitations, it *may* be pleaded — it *may* be set up on the trial and it may not.

It will not do to say that by authorizing a defense to a wrongful act, the original act is authorized by implication. Absolute rights, including that of personal liberty, cannot be taken away without express enactments.

IV. But if the court thinks differently, and holds that a law of the United States is involved, because it has provided a defense, then we say a "case" under the law has not yet *arisen.*" It is only when a "case *arises,*" in the language of the Constitution, that jurisdiction can be given to the United States courts.

"A case arises within the meaning of the Constitution, whenever any question respecting the Constitution, laws or treaties of the United States, has assumed such a form that the judicial power is capable of acting upon it." (*Osborn* v. *United States Bank*, 9 *Wheat. R.*, 815; 5 *Cond. R.*, 785.)

"That power is capable of acting only when the subject is submitted to it by a party who asserts his right in the form prescribed by law. It then becomes a case." (*Curtis' Com. on Const.*, § 7.)

It must expressly appear by the record that one of the cases designated in the Constitution did arise in a State court, and was decided against the laws of the United States, or the United States courts can get no jurisdiction on appeal. (*Connell* v. *Randall*, 10 *Peters R.*, 363; *Cush. Treat.*, 3d ed., 57, *and cases there cited; Sudam* v. *Williamson*, 20 *How. Pr. R.*, 428.)

A case does not arise simply by the defendant's saying he wishes to interpose such a defense.

Nor even by a defendant pleading it among other defenses. Pleading only puts the defendant in a condition to raise the question on the trial. If he does not raise it, no question arises.

Suppose a defendant, sued for an arrest or other arbitrary act, plead, *first*, the general issue or a general denial of the complaint; *secondly, son assault demesne; third*, that he did the act by order of the President.

And, on such pleadings the cause, commenced in a State court, is removed into the United States Circuit Court on motion of the defendant.

On the trial the defendant succeeds on either his first or second plea, and no question is raised on his third plea. The United States Circuit Court would have no jurisdiction, either to render judgment or enforce the collection of it, because no case had *arisen*.

Or suppose a defendant swears that he intends to plead the order of the President, and on his affidavit gets the cause removed to the Circuit Court of the United States, and when there sets up no such defense, how can the United States Court get jurisdiction of the action? It can give no judgment, for no "case" has "arisen," and the defendant, getting the action removed to that court by a false pretense, would escape judgment. All the proceedings in that court would be *coram non judice* and void. The consent of the defendant, in removing

the indictment to that court, could not give jurisdiction for "consent can never confer jurisdiction."

In case of an indictment, the error would be still plainer. If the indictment were removed to the United States Court on an affidavit, and no such defense was set up in that court, there would be no jurisdiction to convict or to punish.

A case does not arise unless it is *necessarily* involved in the action, or the question is actually raised on a trial.

When the plaintiff cannot maintain his action without necessarily raising the question of the validity of an act of Congress, a case has arisen giving jurisdiction to a United States Court when he brings his suit. Such it was in *United States Bank* v. *Osborn* (9 *Wheat. R.*, 738), where the right to sue in that court was given by an act of Congress, and thus the plaintiff had to encounter the question of the validity of that act of Congress at every step of his action.

The case, therefore, arose at the commencement of the action.

But where an act of Congress is only involved in a *defense*, and that not the sole defense, the case does not arise until the question is actually raised in court; and it is never certain it will be raised until it is actually raised.

When the evidence is offered in defense, and its availability decided by the court, the question is raised and the case arises.

All that is said by the court in 9 *Wheat. R.*, 738, is spoken only of cases like that, where the question necessarily arises with the commencement of the action. The meaning of what Chief Justice MARSHALL said, was simply that *the same subject matter which would give appellate, would also give original jurisdiction*. Upon this the court was misled, in the case of *Jones* v. *Leonard* (26 *How. R.*, 433). The attention of the court was not then directed to the distinction. It is undoubtedly true, that original jurisdiction may be conferred wherever there is appellate jurisdiction; but to confer the original jurisdiction, the case "must actually" arise. When the question is necessarily involved, or actually raised and submitted, the case arises, but under no other circumstances.

The People *v.* Murray *et al.*

V. The only constitutional course, therefore, is to proceed with the case in the State court. If no case arises involving the validity of an act of Congress, the State court has, of course, jurisdiction. So it has jurisdiction equally if such a case arises; and from an adverse determination of that question in the State court, the defendant has, by the Constitution, the right of appeal and review in the United States Supreme Court.

VI. Another and complete answer to this motion is, that the defendant is indicted for a statutory State offense, of which a court of the United States has and can have no jurisdiction. The punishment is prescribed by a State statute, and it can only be inflicted by a State court.

The governor only, and not the President, has power to pardon for a crime against the State. But the governor would have no power over a conviction in the United States courts. The complications and difficulties which would follow the removal of this indictment show its impossibility.

VII. The act of 1863, under which this removal is sought, is unconstitutional, and so it has been decided in other States. (*Griffin* v. *Wilcox*, 21 *Ind. R.*, 370; *State of Ohio* v. *Bliss*, 10 *Pittsburgh Law Journal*, 304.)

A more atrocious violation of the Constitution cannot be conceived, than this attempt to make the will of the President the law of the land, and to make his order a justification of every wrong, and a defense for every possible crime.

VIII. The act of Congress in question is, by its terms, only applicable to cases growing out of the rebellion, and it is not claimed that the transaction in question was, in any way, connected with the rebellion.

RUSSELL, *City Judge.* It was not controverted, on the argument against the defendants, that it was for acts claimed to be a violation of a criminal statute of this State that the indictment in this case was found. The ground taken was, that whatever violations of the laws of this State the defendants had committed proceeded from obedience to an order of the President of the United States, for which, under

the act of Congress of March 3, 1863, they were not respon-
sible to the tribunals of this State. The motion made, on the
part of the defendants, was for an order of this court, sending
the indictment to the next Circuit Court of the United States,
for this district, in pursuance of section 5 of that act. The
question is, is this court bound, or ought it to grant such a
motion. At first blush, it would seem strange that the courts
of this State had not the right to take cognizance of offenses
against its laws, without reference to the social, political, official,
or other standing of the parties charged. They certainly are
the most appropriate tribunals to entertain such a jurisdiction.
The State makes its own laws, and its courts should see that
they are enforced. If justice is supposed to be administered
without reference to position or complexion, or any other
extraneous consideration, the defendants, it is fair to presume,
will be treated as other citizens, entitled to the same rights,
and subject to the same legal accountability. Without dis-
cussing the question of State sovereignty, it is not improper
to refer to the instances showing that this State has been con-
sidered capable of impartiality to all, and proving that it has
uniformly asserted its rights to vindicate and enforce its own
laws. One is the celebrated case of *The People* v. *Croswell* (3
*Johns. Cases*, 336), where the defendant was indicted and com-
mitted for libel upon President Jefferson, in a newspaper
published in the city of Hudson, in this State. The other is
the familiar case of *The People* v. *McLeod* (1 *Hill R.*, 377),
where the Supreme Court of this State (composed of NELSON,
Chief Justice, and BRONSON and COWEN, JJ.), remanded the
defendant, upon *habeas corpus*, for trial upon an indictment for
murder, though the act charged upon him had been adopted
by the British Government (of which he was the subject), and
had become the subject of diplomacy between that govern-
ment and our own. If, notwithstanding these proceedings,
Congress had the power to take away the jurisdiction of this
court in the present case, and confer it upon the Circuit Court
of the United States, and has done so, this court would readily
yield its obedience to such a law. On the argument of the

The People *v.* Murray *et al.*

present motion, the prosecution discussed two points: *First,* as to the constitutionality of the act of March 3, 1863 ; and, *second,* as to whether, even if Congress could constitutionally enact such a law, the law as enacted was so framed, or worded, as to amount to a constitutional exercise of its power. Whatever may be my views upon the first point presented, I do not deem it necessary to pronounce upon that point, for it coincides with the views of the prosecution as to the second point urged. Assuming that the act as drawn, gives the Circuit Court of the United States the power to try the present indictment, it is not easily seen where that court would get the power to punish, in case of conviction, or who, in the event of conviction and sentence, would have the right to pardon. If we suppose that the present prosecution could be transferred to the Federal courts and could be directed to be there continued with the same effect as if it regularly proceeded in the courts of this State, that does not obviate the present difficulty. The trouble is, Congress has not so said, though the fifth section of the act uses these words: " That if any suit or prosecution, civil or military, has been, or shall be, commenced in any State, or court," &c., when it comes to provide for the powers of the Circuit Court over the matters removed to it, it uses terms applicable solely to civil proceedings. The provision is as follows: " And such copies (meaning of the process and proceedings against the party seeking the removal in the court of original jurisdiction), being filed as aforesaid, in such court of the United States, the case shall proceed therein in the same manner as if it had been brought in said court by original process, whatever may be the amount in dispute, or the damages claimed, or whatever the citizenship of the parties, any former law to the contrary notwithstanding." All the expressions in this sentence are such as are used to designate civil proceedings. Criminal proceedings are not commenced by original process, nor does the amount in dispute, nor do the damages claimed, nor does the citizenship of the parties at all affect them. Civil proceedings are affected by such matters. If it is granted that, in the outset

of section five, Congress meant to transfer criminal as well as civil proceedings to the Federal courts in the cases named, it has only accomplished its intention in reference to civil proceedings. If the present indictment is transferred to the Circuit Court, the power to try it is not even given; and even if it is, expressly or. impliedly, the power to punish is certainly not given, and that power cannot be exercised by implication. If this be the correct interpretation of this act, to transfer a criminal prosecution under its provisions to the Federal court would be to terminate it. A guilty party could not be punished. Such a law must be unconstitutional. The principle by which this act of Congress is to be construed is a severe one. No court of competent jurisdiction is to be interfered with in the assertion of its authority, unless the legislative power has so said in a law validly passed, and couched in plain, intelligible and unambiguous language. Under the judiciary act of September 24, 1789 ( 1 *Statutes at Large, p.* 73 ; § 12, *p.* 79), provision was made for the removal of certain civil actions, commenced in the State courts, into the Circuit Court of·the United States, and the formula by which that was to be done was carefully prescribed. In this State, in *Redmond* v. *Russell* (12 *Johns. R.*, 153), it was held, as early as 1815, that this.provision of the judiciary act of 1798 must, and would be, strictly adhered to and observed ; that the one set of courts could not lose, nor could the other set acquire jurisdiction, but in the very mode prescribed. (*See, also, Conkling's Treatise,* 3d ed., 173, 174, 476, 480.) The Supreme Court of the United States has also held, that, if a cause is improperly removed to a Circuit Court, it is its duty to remand it to the State court. (*Follard* v. *Dwight,* 4 *Cranch R.*, 421.) Under the judiciary act of 1789, the proceedings for removal, as under the act in question, of 1863, are to take place in State courts.

Under the act to provide for the collection of duties on imports of March 2, 1833 (4 *Stat. at Large,* 632), the jurisdiction of the Circuit Courts of the United States was extended to all cases, in law and equity, arising under the revenue laws

The People *v.* Murray *et al.*

of the United States, and if any suit was commenced in a State court for any matter growing out of these laws, the application for its removal was directed to be ˙by a petition to the appropriate Circuit Court. It would seem by this that Congress has had before its mind the subject, which of the two sets of courts should be the instruments through or by which the jurisdiction of one of them is to be transferred to the other. If, in some instances, the State courts are preferred, and, in others, the Federal, the argument is deducible that there is some reason for these respective preferences. There must be some amount of confidence and discretion reposed in both sets of courts in the performance of this duty. In *Gordon* v. *Longest* (16 *Peters R.*, 97), the Supreme Court of the United States held that the judge of a State court, to which an application is made for the removal of a cause into a court of the United States, must exercise a legal discretion as to the right claimed to remove the cause. As I understand this decision, the court is to be satisfied of two things : First, that the law under which the removal is sought is valid ; and, secondly, that it has been literally adhered to in the steps taken to accomplish the removal. The discretion is not arbitrary, but must yield to the law. In this case I am not satisfied that the fifth section of the act of 1863, so far as it affects the transfer of criminal prosecutions from the State to the Federal courts, is valid, and must therefore deny the motion on the part of the defendants. This conclusion does not at all conflict with the judgment of the general term of the Supreme Court of this district, in the case of *Jones* v. *Seward* (26 *How. Pr. R.*, 433) ; nor does it conflict with the Constitution of the United States˙ in its declaration that that instrument, and the laws made in pursuance of it and the treaties of the United States, shall be the supreme law of the land ; nor with the provision that the judicial power of the United States shall extend to all cases, in law and equity, arising under that instrument, or the laws or treaties of the United States. The case of *Jones* v. *Seward* was a civil proceeding, and did not involve the question submitted to this court. As the Constitution of the United States does not

execute itself, but becomes effective by the action of Congress, which body must pass the proper laws in execution of the powers it gives, the defendants cannot place themselves upon that instrument. This subject will be found fully considered in the matter of *Metzges* (1 *Brevard S. C. R.*, 248).

I came to the present conclusion more willingly because the defendants, on the trial of the indictment, can claim the benefit of the same legal principles and rules as would be applicable in the United States courts. The judiciary act of 1789 (*4th Statutes at Large*, 85, § 25), provides for the review, upon a writ of error, by the Supreme Court of the United States, of the final judgment or decree, in any suit, of the highest court of law or equity in any State, " where is drawn in question the validity of a treaty or statute of, or an authority exercised in, the United States, and the decision is against their validity; or where is drawn in question the validity of a statute of, or an authority exercised under, any State, on the ground of their being repugnant to the Constitution, treaties or laws of the United States, and the decision is against their validity; or where is drawn in question the construction of any clause of the Constitution, or of a treaty or statute of the United States, and the decision is against the title, right, privilege or exemption specially set up or claimed by either party under such clause of the said Constitution." This provision of the judiciary act came under the consideration of the Supreme Court of the United States in *Cohens* v. *The State of Virginia* (6 *Wheat. R.*, 264), where it was discussed by Chief Justice MARSHALL in one of the most masterly opinions which ever emanated from his great mind. Should any injustice be done to the defendants by the courts of this State, it can be corrected in the mode designed by this provision of the judiciary act. No such apprehension ought to be indulged; for it can hardly be possible that this State, which has so promptly and effectually sustained every legal effort of the general government in the present emergency, will consent to do wrong to any of the agents of the general government for yielding obedience to any of its lawful commands.

The People *v.* Murray *et al.*

HOFFMAN, *Recorder.*   The defendants have been indicted by the grand jury in and for the city and county of New York, for the forcible seizure and confinement of one Arguelles, in violation of the laws of the State of New York against kidnapping.

To this indictment no plea has been interposed by the defendants, but, under the provisions of section five of chapter eighty-four of the laws of the thirty-seventh Congress, they have presented a petition to this court, stating that the act complained of was done by order of the President of the United States, and asking, for that reason, that the indictment may be removed from this court into the United States Circuit Court for trial.

Section four of the act of Congress referred to provides that any order of the President, or under his authority, made at any time during the existence of the present rebellion, shall be a defense in all courts to any action or prosecution, civil or criminal, for any search, seizure, arrest or imprisonment made, done or committed, or acts omitted to be done, under and by virtue of such order, &c., and that such defense may be made by special plea or under the general issue; and section five of the act under which this application is made, is as follows:

" § 5. *And be it further enacted,* That if any suit or prosecution, civil or criminal, has been or shall be commenced in any State court against any officer, civil or military, or against any other person, for any arrest or imprisonment made, or other trespasses or wrongs done or committed, or any act omitted to be done, at any time during the present rebellion, by virtue or under color of any authority derived from or exercised by or under the President of the United States, or any act of Congress, and the defendant shall, at the time of entering his appearance in such court, or if such appearance shall have been entered before the passage of this act, then, at the next session of the court in which such suit or prosecution is pending, file a petition stating the facts and verified by affidavit, for the removal of the cause for trial to the next Circuit Court of the United States, to be holden in the district where the suit

is pending, and offer good and sufficient surety for his filing in such court, on the first day of its session, copies of such process and other proceedings against him, and also for his appearing in such court, and entering special bail in the cause, if special bail was originally required therein, it shall then be the duty of the State court to accept the surety and proceed no further in the cause or 'prosecution,' and the bail that shall have been originally taken shall be discharged. And such copies being filed as aforesaid, in such court of the United States, the cause shall proceed therein in the same manner as if it had been brought in said court by original process, whatever may be the amount in dispute or the damages claimed, or whatever the citizenship of the parties, any former law to the contrary notwithstanding."

I will not now discuss the character of this most remarkable legislation. At the proper time and in the proper place it will, I trust, receive the consideration and construction which it merits. The question of its constitutionality, except so far as it affects the question of the transfer of the indictment to the courts of the United States, is not involved in this motion, and I shall not examine here any question but the one at issue. Upon the argument of the motion the counsel for the defendant asserted that if the indictment should be removed to the United States Circuit Court, and a trial should be there had, followed by a conviction, that the judges of the United States Court could sentence the defendant, under the laws of the State of New York, to suffer the punishment prescribed by those laws, and that the power to pardon would rest in the President of the United States.

If these assertions were well founded, we should have the strange picture presented of a United States judge administering the penal laws of the State of New York, and the President of the United States extending a pardon to one convicted of a crime against the laws of that State, which had been committed by his own order. Such a result would seem to be more appropriate to an act entitled "An act to prevent the

punishment of any man who shall commit a crime by order of the President of the United States."

But I think these assertions of counsel are not well founded, and cannot be maintained.

There is no authority for saying that a judge of a United States court could sentence a criminal in pursuance of the laws of a State. Those judges have no powers except such as are conferred on them by the laws of the United States, under the Constitution of the United States. Congress has never conferred upon them the power to pass any sentence upon any criminal offender against the laws of a State. Even the act of 1863 is silent upon the subject, and no powers to that effect had ever been given before, because (if for no other reason) no one, until 1863, ever contemplated that a court of the United States would be called upon to try offenders against the criminal laws of a State.

If, then, this indictment were transferred, and the defense that the act complained of was done by the order of the President of the United States should fail, and the defendant should be convicted, no judgment whatever could follow upon that conviction.

Again, if a judgment could follow, no pardon could be extended to the offender; the President of the United States could not pardon, for the same reason that the offense is against the laws of the State, and not against the laws of the United States; and section two of article two of the Constitution of the United States confers upon the President the power to pardon and reprieve only for offenses against the United States.

That it did not confer upon the President the power to pardon offenders against the laws of a State, if convicted in a United States court, is perhaps a good argument to show that the framers of the Constitution never contemplated that an offender against the laws of a State should be tried in the courts of the United States.

The governor of the State of New York could not pardon, because this power, under the Constitution of the State, clearly relates only to cases of conviction in the courts of the State,

It is very clear the framers of the Constitution never contemplated that any other courts would be clothed with power to enforce the State's penal laws.

Again, section 6 of the act of Congress above mentioned provides that any suit or prosecution described in that act, in which final judgment may be rendered in the Circuit Court, may be carried by writ of error to the Supreme Court, *whatever may be the amount of the judgment.* The closing words of this section show that it relates only to civil suits or proceedings, and *not to criminal;* and it is the only proviso on that subject in the act.

Now, it is well settled that the judgments of the United States Circuit Courts in criminal cases *are final,* and the Supreme Court possesses no appellate jurisdiction in such cases. (*United States* v. *Moore,* 3 *Cranch R.,* 159; *ex parte Kearney,* 7 *Wheat. R.,* 38; *ex parte Watkins,* 33 *Pet. R.,* 193.)

It is only in cases where the Circuit judges are divided in opinion, that the case can be brought before the Supreme Court. (*Act of April* 29, 1802.)

If, therefore, this indictment remains in this court, and a question under the act of Congress of 1863 shall arise *in the progress of the cause,* the Supreme Court of the United States, in the exercise of its appellate jurisdiction, could ultimately review the judgment of this court, and pass upon the constitutionality of the law in question.

If, on the other hand, it is transferred to the United States Circuit Court, the question of the constitutionality or unconstitutionality of the law of Congress cannot be submitted to the adjudication of the Supreme Court of the United States.

These suggestions are, in my judgment, material to the question under consideration, because they tend to show, in the first place, that although the words of the act of 1863 are very broad, yet Congress could hardly be considered to have intended (even if they had the power to do so) to confer jurisdiction upon the United States court to try, in the first instance, an indictment found in a State court, inasmuch as they have wholly neglected to provide any way in which that jurisdiction

The People *v.* Murray *et al.*

could be exercised, and in which the case could be prosecuted to judgment and execution, and inasmuch as the effect would be to deprive the Supreme Court of the appellate jurisdiction, in the exercise of which it could reverse the judgment of the State court, if the indictment was not removed.

In the second place, these suggestions tend to show that, even if Congress did so intend, it is not only an instance of legislation not contemplated by the Constitution of the United States, but it is so improvident and incomplete that no courts can give effect to it.

II. But, independent of these suggestions, Congress has no power, in my judgment, to confer upon the United States courts jurisdiction to try indictments found in the State courts.

The case of *Jones* v. *Seward*, decided in the Supreme Court in this district, is no authority in this case. I need not pause to state the difference in the two cases. They are wholly unlike.

The argument of the defendant's counsel is, that, upon the trial of this indictment, the consideration of a law of the United States will be involved; that, in every case arising under the laws of the United States, the courts of the United States have appellate jurisdiction to reverse the judgments of the State courts; and that, in all cases to which appellate jurisdiction extends, Congress has the power of conferring original jurisdiction. In support of this, he quotes the *dictum* of Chief Justice MARSHALL, in the case of *Osborn* v. *The United States* (9 *Wheat. R.*, 821), which is as follows:

"We perceive no grounds upon which the proposition can be maintained, that Congress is incapable of giving to the Circuit Court original jurisdiction in any case to which the appellate jurisdiction extends." ·

Whatever Chief Justice MARSHALL has said is entitled to the greatest respect, and I should hesitate about refusing to assent to it, if I could not find a warrant for such refusal in his own recorded declarations. I do find such warrant in his opinion in the case of *Cohen* v. *Virginia* (6 *Wheat. R.*, 264), in which he says:

"It is a maxim, not to be disregarded, that general expressions, in every opinion, are to be stated in *connection with the case* in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit in which the very point is presented for decision."

Now, in the light of this maxim, I propose to show that what Chief Justice MARSHALL said in the case of *Osborn* has no application to, and is no authority in, the case now under consideration.

The Bank of the United States sued Osborn in the United States Circuit Court, by authority of its charter, which was under an act of Congress, and which gave the United States courts original jurisdiction of suits by and against the bank. The court decided that that provision in the charter was warranted by the third article in the Constitution, which declared that the judicial power of the United States should extend to all cases arising under the Constitution and "the laws of the United States." Judge MARSHALL said: "This suit is a case; and the question is, whether it arises under the laws of the United States;" and soon after he says: "The Constitution enumerates cases in which the jurisdiction of the United States courts is *original and exclusive*, and then defines *that which is appellate;*" and he adds as follows:

"It is not insinuated that the judicial power, in cases depending upon the character of the cause, cannot be exercised, in the first instance, in the courts of the Union."

And then he uses the words cited by defendant's counsel, and soon after uses this all-important language:

"We think, then, that when a question, to which the judicial power of the Union is extended, forms an ingredient in the original cause, it is in the power of Congress to give the Circuit Courts jurisdiction of that cause, although other questions of fact may be involved in it. The case of the bank is, we think, a very strong case of this description. The charter of incorporation not only gives it, but gives it every facility which it possesses."

"This being (meaning the bank) can acquire no right, make no contract, bring no suit, which is not authorized by a law of the United States."

"Can a being thus constituted have a case which does literally as well as substantially arise under the law?"

And in another place he says: "The act itself is the first ingredient of the case — its origin."

It was under such a state of facts, and in such case, that Judge MARSHALL gave utterance to the dictum quoted by defendant's counsel. It was applicable to such a case, and to every case where a question arising under an act of Congress is involved "in the character of the cause;" "forms an ingredient of the original cause;" exists in its very inception, and without the commencement of which the cause cannot proceed a single step.

It has no application to a case in the origin of which neither the Constitution nor the laws of the United States are involved, and in which a question involving either may never arise, or, if it does, can only arise "in the progress of the cause."

In the case of Cohens v. Virginia, above cited, we find Chief Justice MARSHALL furnishing an authority upon this point, when he says, as follows, viz.:

"That the Constitution or a law of the United States is involved in a case, and makes a part of it, may appear in the progress of a cause, in which the courts of the Union, but for that circumstance, would have no jurisdiction, and which, in consequence, could not originate in the Supreme Court. In such a case, the jurisdiction could only be exercised in the appellate form."

In the same case, Judge MARSHALL says: "The original jurisdiction of the Supreme Court, where a State is a party, refers to those cases in which jurisdiction might be excluded in consequence of the character of the party, and an original suit might be brought in any of the Federal courts; not to those cases in which the original suit might not be initiated in a Federal court of the last description, in every case between a State and its citizens, and put off every case in which a State

is enforcing its penal laws. In such cases, therefore, the Supreme Court cannot take original jurisdiction."

It needs no argument to show the application of these words of Judge MARSHALL to the case now under consideration, a case in which "the State of New York is seeking to enforce its penal laws," and which could not have been instituted in the courts of the Union. A case in which a question under a law of the United States may never be presented at all, or if it should be, can only be "in the progress of that cause." For an indictment by the people of the State of New York against one of its citizens, for an offense against its penal laws, does not involve in itself any question under any law of Congress. If such question should ever arise, it could only be on the progress of the defense. If it should then arise, and a decision should be had adverse to the law, the Supreme Court of the United States would, in the exercise of its appellate jurisdiction, reverse the judgment of the State courts. If it should not arise, then the courts of the United States could have no jurisdiction at all.

It is not enough that an act of Congress gives the United States Circuit Court jurisdiction. It can have no jurisdiction which is not conferred by the Constitution as well as by the law.

The construction which I contend for is, I think, just and reasonable. It secures to the State all its rights, and it secures to the Federal government all its merits, and all it has any right to demand. It secures to the State its right, in the first instance, to prosecute all offenders against its laws, in its own courts, and to insure them punishment in case of conviction.

It secures to the Federal government the right to review, in its Supreme Court, the judgment of the State courts, in all cases where a defense to an indictment arises under an act of Congress, if such defense should be overruled by the State courts. If the judgment of the State courts was erroneous, it would be reversed; if it was not, it would be affirmed, and the case would be remanded to the State court for judgment.

On the other hand, the construction of the Constitution contended for by defendant's counsel, would deprive the State

The People *v.* Murray *et al.*

courts of all power and right to enforce the penal laws, of the State, in all cases in which Congress should undertake to declare what should be a defense to them.

It would subject all the penal laws of a State to the will of Congress. It would, under the act in question, entitle any criminal indicted in our courts for any offense, to allege that he acted by order of the President, and to claim the removal of the cause into a court of the United States. It would, as I have shown, transfer an indictment for any offense against a State law, to a court organized under a United States law, which has no power to enforce the laws of the State, or to punish in accordance therewith. If the defendant, upon such transfer, could be tried and convicted, it would place him in a position to which no power of pardon could extend; and last, but not least, the transfer to the United States Circuit Court in the case now under consideration, or in any case else, would prevent hereafter the consideration by the Supreme Court of the United States, of the extraordinary act of Congress under which this motion to transfer has been made.

Considerations such as these may have influenced Judge MARSHALL, when he, in the case of *Cohens* v. *Virginia*, used the language I have before quoted, and they may also have influenced Chief Justice McKEAN, when he declared, in *Respublica* v. *Cobbett* (3 *Dallas R.*, 476), "That neither the Constitution nor the act of Congress, ever contemplated that any court under the United States should take cognizance of anything savoring of criminality against the State."

Believing, therefore, as I do, that the State of New York has the right, under the Constitution of the United States, to try in its own courts all offenders against its general laws, subject to the right of the United States Supreme Court to review their judgments, if, in the progress of the trial, a question should arise under any law of the United States, and believing, as I do, that Congress has no power to deprive the State of New York of that right, I concur in the decision of Judge RUSSELL denying the defendant's motion to transfer the indictment.               Motion denied.